Mark R. Thierman (SBN 72913)
THIERMAN LAW FIRM
7287 Lakeside Drive
Reno, Nevada 89511
Telephone:  (775) 284-1500
Facsimile:    (775) 703-5027

Joseph Cho (SBN 198844)
Ronald H. Bae (SBN 186826)
AEQUITAS LAW GROUP, APLC
500 S. Grand Ave., Suite 1310
Los Angeles, California 90071
Telephone:  (213) 223-7144
Facsimile:    (213) 223-7098

Attorneys for Plaintiff JEFFREY LEE ALLEN
(Additional plaintiff's counsel listed on following page)

DAVID R. ONGARO, SBN 154698
KYANN C. KALIN, SBN 209030
THOMPSON & KNIGHT  LLP
650 California Street, Fifth Floor
San Francisco, CA  94108
Telephone:  (415) 433-3900
Facsimile:  (415) 433-3950

Attorneys for Defendant
LABOR READY SOUTHWEST, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

JEFFREY LEE ALLEN; on behalf of himself, all others similarly situated, the general public and as an "aggrieved employee" under the California Labor Code Private Attorneys General Act,

Plaintiff,

v.

LABOR READY SOUTHWEST, INC., a Washington corporation doing business in the State of California; and DOES 1 through 50, inclusive,

Defendants.

Case No.  2:09-CV-04266 DDP(AGR)

**NOTICE OF AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION**

Judge:   Hon. Dean Pregerson
Date:     April 8, 2013
Time:    10:00 a.m.
Crtrm:   3

- 1 -

## ADDITIONAL COUNSEL FOR PLAINTIFF

1

2   Shaun Setareh (SBN 204514)
    LAW OFFICES OF SHAUN SETAREH

3   9454 Wilshire Boulevard, Penthouse Floor
    Beverly Hills, California 90212
    Telephone:   (310) 888-7771

4   Facsimile:   (310) 888-0109

5   Louis Benowitz (SBN 262300)
    LAW OFFICES OF LOUIS BENOWITZ

6   9454 Wilshire Boulevard, Penthouse Floor
    Beverly Hills, California 90212

7   Telephone:   (310) 888-7771
    Facsimile:   (310) 888-0109

8
    Christopher J. Canlas (SBN 247291)

9   CANLAS LAW GROUP, APLC
    615 W. Beverly Blvd.

10  Montebello, CA 90640
    Telephone:   (323) 888-4325

11  Facsimile:   (323) 888-4329

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 8, 2013 at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 3, 2nd Floor in the Courtroom of the Honorable Dean Pregerson, in United States District Court of the Central District of California, 312 North Spring St., Los Angeles, CA 90012, Plaintiff Jeffrey Allen and Defendant Labor Ready Southwest, Inc. ("Labor Ready"), will and hereby do move the Court for an order granting this Joint Motion for Preliminary Approval of Class Action Settlement.

The parties make this Motion for Preliminary Approval on the grounds that the settlement is fair, adequate, and reasonable and otherwise satisfies the requirements for preliminary approval.  In addition, because the proposed class meets the requirements of Federal Rule of Civil Procedure 23, the class should be certified for settlement purposes.

Plaintiff bases this Motion upon this Notice of Motion and Motion for Preliminary Approval, the accompanying Memorandum of Points and Authorities, Declaration of Mark R. Thierman, Declaration of Joseph Cho, Declaration of Shaun Setareh, Declaration of Kyann C. Kalin, Declaration of Garrett Ferencz, the Joint Stipulation of Class Action Settlement and Release Agreement and exhibits, all pleadings and records on file herein, and such other documentary evidence or arguments as may be presented to the Court prior to or at the hearing on the Motion.

THE THIERMAN LAW FIRM, P.C.

Date:  March 11, 2013            By:  /s/ Mark Thierman_____

Class Counsel/Attorneys for Plaintiff

- 3 -

AEQUITAS LAW GROUP, APLC

Date: March 11, 2013          By:   /s/ Joseph Cho_____

Class Counsel/Attorneys for Plaintiff

THOMPSON & KNIGHT LLC

Date: March 11, 2013          By:   /s/ Kyann C. Kalin_____

Attorneys for Defendant
LABOR READY SOUTHWEST, INC.

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiff Jeffrey Allen ("Plaintiff" or "Allen") brought a wage and hour class action lawsuit against Defendant Labor Ready Southwest Inc. ("Defendant" or "Labor Ready") pursuant to California law and the Fair Labor Standards Act ("FLSA").  Plaintiff, a former temporary worker for Labor Ready, asserted multiple causes of action against Labor Ready, but the claims can be summarized in two categories.  The first category of claims are based on Plaintiff's allegations that Labor Ready, a temporary work agency, failed to compensate temporary workers who worked out of its branch offices located in the State of California, for time the workers spent waiting in Labor Ready's office for work and time spent traveling to and from Labor Ready's office to the jobsite where the temporary workers performed the work for which they were paid.  These "Wait and Travel Time" claims, include failure to pay minimum wage and overtime.  In addition, Plaintiff alleged that the small service fee charged by Cash Dispensing Machines ("CDMs") located in Labor Ready's offices, which workers could elect to utilize to cash their Labor Ready paychecks, violated the California Labor Code because it was an illegal deduction and violated Labor Code Section 212 regarding approved methods for paying wages (the "CDM Claims").  Plaintiff also asserts various penalty claims (including a claim under the Private Attorneys' General Act and Labor Code Section 203), paycheck claims (including claims under Labor Code Section 226(a)) as well as a Business and Professions §17200 claim, which are related to and derivative of the Wait and Travel Time claims and CDM claims.  Declaration of Mark R. Thierman ("Thierman Decl.," ¶14).

This case has been litigated for approximately 3 and half years.  At the time that the parties reached an agreement to settle the claims on a class wide basis, the entire case was on appeal.  With respect to the Wait and Travel Time claims, this

court granted summary judgment in favor of Defendant, and Plaintiff appealed this order to the Ninth Circuit.  As for the remaining CDM claims, they had been remanded to Los Angeles Superior Court where all but the Private Attorney General's Act claim had been compelled to individual arbitration.  This arbitration order was also on appeal and cross-appeal.

During the pendency of the appeals, the parties entered into extensive arm's length negotiations to resolve all of Plaintiff's claims.  The ultimate result of the parties' extensive negotiations was a settlement agreement that is fair, reasonable and adequate to class members, and which accounts for the weaknesses of Plaintiff's case, as well as the uncertainties and risks involved in continuing with litigation and the appeals.  The class members – particularly in light of the size of the class, the uncertainty surrounding the viability of the Wait and Travel Time claims and the arbitration agreements containing class action waivers – are afforded substantial relief.  In addition, the class notice complies with Rule 23(e). Thierman Decl., ¶¶27-43.

In addition to the fairness, reasonableness, and adequacy of the settlement agreement, Plaintiff contends, and for the purposes of settlement only, Defendant does not dispute, that the proposed class meets the requirements for certification for settlement.  All of the Rule 23(a) elements of class certification – numerosity, commonality, typicality, and adequacy of representation – are satisfied.  In addition, the class meets the predominance and superiority factors under Rule 23(b).   In sum, the settlement meets all of the requirements for preliminary approval, and the parties respectfully request that the Court approve the settlement. Thierman Decl., ¶¶44-49.

- 6 -

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A.     The Class Action

Plaintiff Jeffrey Allen filed his Class Action Complaint in Los Angeles Superior Court on April 30, 2009.  On June 15, 2009, Defendant removed the case to the United States District Court for the Central District of California under the Class Action Fairness Act.  Thierman Decl., ¶15.

During this same time frame, a companion class action asserting identical wait and travel time claims and pay check claims along with meal and rest break claims, was pursued by Plaintiff's co-counsel.  This companion case, *Estrella Vicencio v. Labor Ready Southwest, Inc.,* Case No. 2:08-cv-08646-RGK (CWx) (C.D. Cal), was before Judge Klausner, who on January 8, 2010 denied class certification.  Thierman Decl., ¶ 16; Declaration of Joseph Cho ("Cho Decl."), ¶¶5-6, 8; *See* Request for Judicial Notice in Support of Preliminary Approval Motion ("RJN"), Ex. 1 (*Vicencio* Order Re Plaintiff's Motion for Class Certification).

Subsequent to the denial of class certification in *Vicencio*, Plaintiff Allen's Motion for Class Certification was heard and also denied on February 16, 2010. Thierman Decl., ¶ 17.

Defendant filed a Motion for Summary Judgment as to all of Plaintiff's claims, which this Court granted in part on March 9, 2011.[1]  The order on the Motion for Summary Judgment dismissed with prejudice Plaintiff's wait and travel time claims and Plaintiff's claim that Defendant's paychecks violated Cal. Lab. Code Section 212.  This Court then remanded the case to state court since only Plaintiff's CDM state law claims remained.  Specifically, the remanded claims all related to Plaintiff's allegation that Defendant violated the California Labor Code by providing employees the option of cashing their pay checks at CDMs located in

---

[1] The Court initially issued an Order as to Defendant's Motion for Summary Judgment on December 2, 2010, but then issued an Order and Amended Judgment on March 9, 2011.

- 7 -

Labor Ready's branches that charged the employees a small fee, and the related claims under the Private Attorney General Act ("PAGA") and California Business and Professions Code Section 17200.  Plaintiff appealed the Court's summary judgment ruling to the Ninth Circuit.  Thierman Decl., ¶18.

Following the remand to state court, on April 27, 2011, the United States Supreme Court issued its ruling in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) (hereafter "*Concepcion*").  In *Concepcion*, the Supreme Court upheld an arbitration clause containing a class action waiver, which the plaintiffs had challenged on the ground that the waiver was unconscionable under California state law.  In overruling long-standing California precedent that class-action waivers in arbitration agreements are unconscionable, the Court upheld the arbitration clause containing the class action waiver, reasoning that the FAA preempted California state law.  Thierman Decl., ¶19.

Because Plaintiff Jeffrey Allen's Employment Application (along with the employment applications of the tens of thousands of putative class members) contains a complete class and representative action waiver, following the *Concepcion* decision, Labor Ready moved to compel Allen to individually arbitrate all of his remaining claims against Labor Ready.  Plaintiff opposed Labor Ready's Motion to Compel Arbitration.  Thierman Decl., ¶20.

On November 10, 2011, the court granted Defendant's Motion to Compel Arbitration as to the CDM claims asserted under the California Labor Code Sections 212, 221 and 400-410 and Business and Professions Code, however, the superior court retained jurisdiction over the PAGA claim.  Plaintiff appealed the court's decision compelling all but the PAGA claims to arbitration and Defendant filed a cross-appeal regarding the court's denial of the Motion to Compel Arbitration as to the PAGA claim.  At the time the parties reached a settlement in this case, the appeals in both the Ninth Circuit Court of Appeal and the California

- 8 -

Court of Appeal had been briefed (fully in the Ninth Circuit case and partially in the California Court of Appeal case) but not yet decided.  Thierman Decl., ¶ 21.

### B.     The Parties' Mediations and Subsequent Negotiations

The parties initially mediated this case on November 9, 2009 before the Honorable Judge Legg at JAMS in San Francisco, California.  Then, on October 2010, the parties engaged in their second effort at settlement, at which time they participated in a full-day mediation session with Mark S. Rudy, Esq.  At the time of the second mediation, Labor Ready's Motion for Summary Judgment was pending and *Concepcion* had not yet been decided.  The parties were unable to reach an agreement at this second mediation despite a mediator's proposal from Mr. Rudy.  Thierman Decl., ¶ 22.

Approximately two years later, while the appeal of this Court's summary judgment order and the state court's order regarding arbitration were briefed but before receiving any rulings from the appellate courts, the parties weighed the benefits and risks of continuing with the litigation, returned to their negotiations and ultimately reached a settlement.  Specifically, on August 9, 2012, the parties attended a second mediation session with Mr. Rudy.  Although the case did not resolve during the mediation itself, Mr. Rudy made a mediator's proposal and then continued to work with the parties following the mediation.  Thierman Decl., ¶23.

Ultimately the parties were able to reach an agreement as to the terms of a settlement which were based in large part on Mr. Rudy's Mediator's Proposal.[2]

---

[2] Prior to each mediation, the Parties exchanged and continued to exchange, significant information relating to the claims alleged in Plaintiff's Complaint, both in response to formal discovery requests and informal information requests to permit class-wide estimates.  Among other things, Defendant provided class-wide documents and data from which Plaintiff was able to make estimates relating to class size, average hourly rate, number of dispatches, length of pre-dispatch waiting time, average CDM charge, frequency of CDM usage, etc.  Thierman Decl., ¶24.

With this information, the Parties engaged in numerous discussions relating to their respective legal and factual positions concerning whether the action could be maintained and prosecuted as a Class in the courts and/or arbitration, the merits of Plaintiff's claims and Defendant's defenses.  Following years of information gathering; significant U.S. Supreme Court

Based on this agreement, the parties filed a Notice of Settlement and Stipulated Motion for Remand with the Ninth Circuit Court of Appeals to remand the matter to the district court for settlement proceedings, which it did on October 23, 2012. Thierman Decl., ¶ 23.

### III.   SUMMARY OF PROPOSED SETTLEMENT TERMS

The Settlement resolves all of Plaintiff's claims against Labor Ready, as well as all of the Class Members' claims related to alleged failure to compensate for wait and travel time, Labor Ready's wage payment practices, interest, and other associated penalties under state law.  The details of the Settlement are contained in the Joint Stipulation of Class Action Settlement and Release Agreement ("Settlement Agreement"), attached as Exhibit A to the Thierman Decl.

### A.   Settlement Class

The class is defined as individuals who were employed by Labor Ready as temporary workers in California during the period from April 30, 2005 through preliminary approval of the proposed settlement.  Settlement Agreement, ¶ 4.  This class consists of approximately 206,000 temporary workers.  Declaration of Garrett Ferencz in Support of Preliminary Approval Motion for Class Action Settlement ("Ferencz Decl."), ¶4.

### B.   Settlement Amount and the Payment of Claims

The total amount of the settlement reached by the parties is $4,500,000 ("Gross Settlement Fund").  This sum includes: payments to the class, attorneys' fees, service fee to the class representative, costs of administration, reimbursement of reasonable litigation expenses, penalties, a PAGA payment, interest, and taxes.

---

and California Supreme Court rulings during the litigation; heavy law and motion practice, including Motions for Class Certification, Motion to Compel Arbitration, Motion for Summary Judgment, and the filing of appeals in both the Ninth Circuit and the California Court of Appeals; and multiple mediations attended by 5 experienced plaintiff-side class action law firms, the Parties agreed to resolve the case on a class wide basis.  Thierman Decl., ¶25.

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

With respect to the recovery for the class, each Class Member who submits a Claim Form and who does not elect to opt-out of the settlement will receive payment of either $10.00 (for class members who did not use the CDMs in Labor Ready's offices), or $25.00 (for class members who did use the CDMs in Labor Ready's office to cash their paychecks). Approximately 86,000 class members did not use CDMs, and approximately 120,000 class members did use CDMs. Ferencz Decl., ¶5.

The payment is fair and reasonable. For those class members who never used the CDMs, the average class member was only sent out on a job for Labor Ready a total of seven times during the class period. Ferencz Decl., ¶6. In addition, the mere fact that an individual received a job from Labor Ready did not mean that the individual ever necessarily came to or waited at Labor Ready's branch office or traveled from the office to a customer job site. In fact, Margie Bedolla, one of the proposed intervenors who has also asserted her own wait and travel time claims against Labor Ready, admitted in her deposition that during the three months she worked for Labor Ready, she never came into Labor Ready's office to wait for a job assignment. Declaration of Kyann C. Kalin In Support of Motion for Preliminary Approval of Class Action Settlement ("Kalin Decl.), ¶ 2, Ex. B (Bedolla Depo.) at 12:7-13:7; 30:17-31:19; 32:2-21. In fact, the only time Ms. Bedolla ever came to Labor Ready's office was when she originally applied for work and to pick up her weekly paychecks. *Id.* Finally, there are obstacles to both the certification and merits of the wait and travel time claims based on prior rulings in this Court, including a summary judgment order dismissing these claims and two orders denying certification.[3] Thierman Decl., ¶¶30-32, 39.

---

[3] The second was in this case and the first was in *Estrella Vicencio v. Labor Ready Southwest, Inc.,* Case No. 2:08-cv-08646-RGK (CWx) (C.D. Cal), a case filed by co-counsel in this action asserting identical wait and travel time as well as meal and rest break claims. A copy of the *Vicencio* Complaint is attached to the RJN as Exhibit 2.

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

As for the class members who utilized the CDM, the settlement provides an additional $15.00.  This $15.00 is more than double the CDM fees paid by the average class member who was dispatched 7 times.  Ferencz Decl., ¶¶6-7.  <u>In fact, this amount will reimburse over 65% of class members who used the CDM for **more than** every dollar of CDM fees they paid, in addition to paying them $10 for the Wait and Travel Time Claims</u>. *Id.* at ¶8.  Without the settlement, Defendants contends that this claim also faces procedural challenges because the class members signed arbitration agreements waiving their right to bring class claims.  In addition, certifying these claims may prove challenging because Defendant has obtained over 1,000 petitions signed by members of the putative class in which they expressed their approval for the CDMs and their objection to their removal from the branch.  Thierman Decl., ¶40.

Finally, in addition to the class payments, the class has obtained significant and lasting injunctive relief in the form of the following changes to Labor Ready's business model and policies:

- Labor Ready shut down the cash dispensing machines throughout California in January 2010 in response to Plaintiff's lawsuit;

- Labor Ready is in the process of replacing the CDMs with a new electronic paycard option whereby workers receive their pay daily, without charge, and without having to go into a Labor Ready branch, or to a bank to cash a check;

- Labor Ready is in the process of providing a direct deposit option for Labor Ready temporary workers;

- Labor Ready has agreed to provide training to all Labor Ready permanent staff in California regarding waiting time, meal and rest breaks and overtime rules as they apply to temporary workers;

- Labor Ready has agreed to audit all Labor Ready branches in California within eighteen months of the final approval of this settlement, to ensure compliance with overtime, waiting time, travel time, and meal and rest break rules;

- Within six months of the final approval of this settlement, Labor Ready will place notices in every Labor Ready branch in California of the nearest bank where they can cash their check (if they choose that option) free of charge;

- 12 -

- Labor Ready is in the process of rolling out, on a trial basis, an optional system of electronic dispatch for temporary workers on with a goal of permanent implementation assuming it proves logistically feasible;

- Within six months of the final approval of this settlement, Labor Ready will place notices in every Labor Ready branch notifying workers that they never have to wait for work;

- Within six months of the final approval of this settlement, Labor Ready will provide meal and rest break and overtime business cards to every then current temporary worker in California informing them of their rights under California law; and,

- Labor Ready has already changed the address on class members' paychecks to an in state address for Wells Fargo Bank in response to Plaintiff's claims, and will implement and ensure that all requirements under Labor Code Section 226(a) and 2810.5 are fully satisfied. Ferencz Decl., ¶9; Settlement Agreement, ¶6.

Labor Ready will also pay to the State of California Labor & Workforce Development Agency a payment of $18,750 which the Parties have agreed represents a reasonable estimate of 75 percent of the PAGA penalties included in this Settlement.  Settlement Agreement, ¶ 5(c).

## C.    Release

Plaintiff and any member of the Settlement Class who have not opted out of the settlement shall, "fully release and discharge Defendants and any and all of their parent, subsidiary and affiliated entities (the "Releasees") from any and all claims that were alleged or could have been alleged in the Complaint in *Jeffrey Allen v. Labor Ready Southwest, Inc.* including but not limited to all claims for: failure to pay minimum wage, overtime wages or secretly paying below minimum wage pursuant to the California Labor Code, the IWC Wage Orders or the Fair Labor Standards Act; failure to timely pay wages during employment or upon termination of employment, including penalties associated therewith; failure to provide timely accurate wage statements or otherwise fail to comply with the requirements of California Labor Code Sections 212, 226 or 2810.5; failure to reimburse for work-related expenses; failure to provide or record meal and/or rest

breaks; failure to pay for reporting time; requiring employees to execute a release of claims to receive wages; and, any violations of the California Labor Code based on Labor Ready's provision of a CDM to Class Members, the fees associated with the use of the CDM or payment through a voucher (as opposed to a check) for use in a CDM  The Releasors also release the Releasees for all claims for violations of California Business and Professions Code §§ 17200, et seq. or for penalties or premium wages associated with any of the claims released by this paragraph, including claims for any penalties under the California Private Attorneys' General Act (Cal. Lab. Code §2699 *et seq.*) or claims for attorneys' fees, costs and interest. The releases in this paragraph apply to claims arising from the Releasors' employment with Labor Ready in the State of California from April 30, 2005 until the preliminary approval of this Settlement Agreement. This release does not include claims to enforce this Settlement Agreement."  Settlement Agreement, ¶8.

### D.      Notice and Claims Administration

Within fifteen days of entry of order granting preliminary approval of the Settlement, Defendant will provide to the Claims Administrator a list of Class Members and their last-known addresses.  The Claims Administrator will then send a Notice of Settlement ("Class Notice") and Claim Form to each Class Member via first-class mail using the most current mailing-address information available, within thirty days of receipt of the Order granting preliminary approval of the Settlement.[4]  Settlement Agreement, ¶¶13-15.  The Class Notice and Claim Form are attached to the Settlement Agreement as  Exhibit 1.[5]  In addition, the

---

[4] A copy of the proposed Class Notice and Claim Form is attached to the Settlement Agreement as Exhibit 1.  The long version of the Claim Form is attached as Exhibit 2 and the Opt-Out Form is attached as Exhibit 3.

[5] The proposed Class Notice and Claim Form will be sent as a folded large postcard, so that class members can simply cut-off the Claim Form from the Notice portion, fill it out, and mail it back without need to open an envelope, sort through multiple pages of documents, fill out the claim form or enclose it in a new envelope before mailing.  Simpluris, the proposed

- 14 -

Class Notice will refer class members to a toll free telephone number and a website where they can obtain information about the settlement and view or request:  (1) a copy of the entire Settlement Agreement; (2) a long form of the Class Notice (attached as Exhibit 2 to the Settlement Agreement); (3) an Opt-Out form (attached as Exhibit 3 to the Settlement Agreement) and (4) additional copies of the Claim Form.

### E.    Content of Notice to the Class Members

The Class Notice will inform Class Members about the basis of the claims, identify who is included in the class, identify who is eligible to receive a payment and the potential for recovery, describe how Class Members may exclude themselves from the settlement, notify Class Members of their right to object to the Settlement, and include the contact information for the Settlement Administrator. The Class Representative Service Payment and Class Counsels' attorneys' fees and costs to be requested will also be included in the Notice.

### F.    Attorneys' Fees, Costs and Incentive Awards

As part of the Settlement, Defendant has agreed not to object to an award of attorneys' fees and expenses not exceeding twenty five percent (25%) of the Gross Settlement Fund.  Class Counsel has agreed not to request more than thirty percent (30%) of the Gross Settlement Fund for attorneys' fees exclusive of costs.  Further, Defendant will not oppose a request by Class Counsel for reimbursement of reasonable litigation expenses, not to exceed $50,000 (fifty thousand dollars). Settlement Agreement, ¶7; Thierman Decl., ¶52.

---

settlement administrator, has indicated that, in its extensive experience, this format results in a higher claims rate than a long form class notice in an envelope.  In the event that this Court believes a more traditional multi-page notice and separate claim form are required, Labor Ready is willing to utilize the long form of the Class Notice attached to the Settlement as Exhibit 2 to be mailed in an envelope along with a Claim Form and Opt-Out form.

- 15 -

The Settlement provides for a payment in the amount of up to $5,000 to Plaintiff as an incentive award on account of the services he has rendered as Class Representative.  Settlement Agreement, ¶ 5(a); Thierman Decl., ¶51.

## IV.   ARGUMENT

### A.   The Proposed Settlement Should be Preliminarily Approved

In the Ninth Circuit, settlements of complex class action lawsuits are strongly favored.  *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Speed Shore Corp., v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy.  Settlement agreements conserve judicial time and limit expensive litigation.").  It is within the broad discretion of the trial court to approve a class action settlement.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The approval of a class action settlement takes place in two stages: preliminary approval and final approval.  *West v. Circle K Stores, Inc*., No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." *See In Re M.L. Stern Overtime Litigation*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864 at *3 (S.D. Cal. April 13, 2009) (quoting Manual on Complex Litigation Fourth § 21.632 (2004)).  During the preliminary process, the Court simply determines "whether there is any reason to notify the class members of the proposed class settlement and to proceed with the fairness hearing." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).  The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

- 16 -

negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  If there are no obvious deficiencies, and the settlement falls into the range of possible approval, it should be preliminarily approved.  *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1057 (9th Cir. 2008)*; Alaniz v. California Processing, Inc*., 73 F.R.D. 269, 273 (C.D. Cal. 1976).  As set forth below, the proposed Settlement satisfies the standard for preliminary approval.

### 1.     The Proposed Settlement is Fair because it was the Product of Arm's Length Non-Collusive Negotiations

The requirement that the proposed Settlement be conducted by arm's-length, and non-collusive negotiations protects the proposed Class Members.  Generally, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval."  Newberg § 11.41; *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("considerable weight" given to settlement reached after hard-fought negotiations).

The proposed Settlement in this case is presumptively fair because it was reached through years of arms' length contentious negotiations utilizing experienced mediators and there is nothing to suggest that there was any collusion between the parties.  In fact, it was reached following three separate full day mediations, two with and under the supervision of Mark S. Rudy, Esq.  Mr. Rudy was fully informed of the complex procedural and legal issues in the case, and has been recognized as one of the top mediators in the California.  Thierman Decl., ¶  .  The fact that an experienced mediator was involved in the settlement strongly evidences the non-collusiveness of the settlement.  *See Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007); *In re Austrian and German Holocaust Litig*., 80 F. Supp. 2d 165, 173-74 (S.D.N.Y. 2000).

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

Here, the parties began negotiating back in November 2009, with a second mediation in October 2010.  The first two mediations served as a starting point for the parties' negotiations, however, they were followed by multiple developments in the case, including Labor Ready obtaining summary judgment and compelling all but one of Plaintiff's claims to arbitration and the resulting appeals. Throughout these developments, the parties continued to return to the topic of settlement.  Then, in August 2012, the parties again spent another day in mediation with Mr. Rudy.  At the conclusion of this second mediation, Mr. Rudy made a mediator's proposal which was nearly identical to the mediator's proposal he issued at the end of the October 2010 mediation.  Although this was not the end of the negotiations, which continued for weeks following the mediation both independently between the parties and with Mr. Rudy's oversight, the proposal shaped the confidential memorandum of understanding and led to the ultimate settlement.  Thierman Decl., ¶23.

In sum, the parties reached this Settlement through arm's-length bargaining, after sufficient investigation and discovery, extensive litigation including appeals, and intensive arms-length negotiating overseen by an experienced and respected mediator with an expertise in employment litigation.  Thierman Decl., ¶¶22-27.

## 2.    The Proposed Settlement is Reasonable and Adequate

In making a determination of whether the Settlement is adequate and reasonable, the Court must ultimately balance the following factors: "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel ..." *Hanlon*, 150 F.3d at 1026.  Here the settlement affords the class members monetary and injunctive relief despite the fact that this Court has already denied Plaintiff's Motion for Class

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

Certification and granted summary judgment against half of his claims, that Plaintiff's employment is governed by an arbitration agreement containing a complete class action waiver which may ultimately prove to be enforceable even as to Plaintiff's PAGA claim, and that all of his pending claims are currently on appeal.  Thierman Decl., ¶28.

Given that Plaintiff would still have to go through the appellate process, litigate class certification, establish class-wide liability, and then prove up various issues regarding damages and penalties, the Settlement is reasonable and fair. Such efforts would take years and might ultimately prove to be unfruitful.  By contrast, the Settlement ensures timely relief and recovery for class claims, including injunctive relief addressing many of the issues raised in Plaintiff's Complaint.  It therefore satisfies the reasonableness and adequacy standards. Thierman Decl., ¶ 29.

a.      Strength of Plaintiff's Case

The putative class has many obstacles to overcome before they can recover monetary funds for their class claims through litigation.  First, Plaintiff must prevail on the appeal pending in the Ninth Circuit to even have a chance of recovering damages for wait and travel time claims.  Even if Plaintiff prevails on appeal, Plaintiff will likely face a Motion to Compel Arbitration on these wait and travel time claims.  Regarding the CDM claims, to continue to pursue these claims on the merits, Plaintiff would first need to succeed on his appeal of the superior court's order compelling all but the PAGA claim to individual arbitration.  Plaintiff would also have to defeat Defendant's cross-appeal to avoid individual arbitration of the PAGA claim.  Finally, even in the event that any potential class action claims may remain after the appeals process, Plaintiff will still be faced with obtaining certification of these claims.  Thierman Decl., ¶30.

i.      *Wait and Travel Time Claims*

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

This Court has already determined that under California law and the FLSA, the time Plaintiff spent waiting for work in Labor Ready's office and traveling to and from Labor Ready's customer's jobsite (where his work was actually performed) was not compensable as a matter of law.  Thierman Decl., ¶31.  The ruling is on appeal, however, this Court is not alone in its determination that this time is not compensable as a matter of law.  A district court for the Western District of Michigan granted summary judgment in favor of Labor Ready on identical wait and travel time claims brought under the FLSA and Michigan state law.  *See Bernal v. TrueBlue, Inc.*, 730 F.Supp.2d 736  (W.D. Mich. 2010).  In *Bernal*, the district court reasoned that summary judgment was appropriate because any time the plaintiffs spent waiting in Labor Ready's offices was "overwhelmingly for the benefit of [the] [p]laintiffs" and that "[n]o reasonable fact finder could determine otherwise."  *Id*. at 744.  Further, the Court held that "[p]laintiffs' travel time to and from the customer's location is not compensable as either an extension of the continuous workday or a principal activity of employment." *Id*. at 747.  Thierman Decl., ¶31.

In the event that Plaintiff prevails on his appeal, Defendant would respond by moving to compel arbitration of the wait and travel time claims.  Given the United States Supreme Court's decision in *Concepcion* and the superior court's prior ruling granting Labor Ready's Motion to Compel all but Plaintiff's PAGA claims to arbitration under Plaintiff's arbitration agreement, Defendant believes that Allen's wait and travel time claims may well be subject to a similar ruling. Thierman Decl., ¶32.

### ii.    CDM Claims

Although Plaintiff's CDM claims survived Labor Ready's Motion for Summary Judgment, Plaintiff has been compelled by the state court to individually

arbitrate these claims with the exception of the PAGA claim.  Thierman Decl., ¶ 33.

The issues of the enforceability of employment agreements containing class action waivers, and the arbitrability of PAGA claims are currently the subject of competing state and district court decisions in California and at least two pending case before the California Supreme Court.  *See Iskanian v. CLS Transportation of Los Angeles,* 206 Cal.App.4th 949 (2012), review granted 9/20/2012; *Caron v. Mercedes Benz Financial Services USA*, Case No. S205263 (review granted 10/24/12).  As a result, whether Plaintiff would ultimately have the right to pursue any of his claims except in arbitration and on an individual basis in arbitration is uncertain.  Indeed, because the class action waiver that Plaintiff signed was contained, in some form, in Labor Ready's Employment Application which each temporary worker completes before working for Labor Ready, Defendant contends that the arbitration agreement will prevent a substantial challenge to any class member's effort to obtain relief on behalf of a putative class.  As a result, whether Plaintiff or any of the putative class members will ultimately have the right to pursue their wage and hour claims against Labor Ready except on an individual basis in arbitration is, at best, uncertain.  Thierman Decl., ¶34.

In addition, if the settlement is not approved, Defendant will assert that class members will be precluded from recovery even on an individual basis because the PAGA statute of limitations is only one year.  *See* Cal. Civ. Code §340; *Amaral v. Cintas Corp.,* 163 Cal.App.4th 1157, 1199 (2008).  Since certification was denied nearly three years ago, Defendant will argue that the statute has not been tolled and any putative class members claims are time barred.  This statute of limitations argument is all the more powerful because Labor Ready turned the CDMs in all of its California offices off in January 2010.  As a result, if this settlement is not

approved, it may well eliminate the class members' only opportunity to recover on the CDM claims.  Thierman Decl., ¶35.

As to the merits of the CDM claims, there has also been a prior determination on this issue by a California court, which Defendant contends is binding upon the class.  In *Wilkerson v. Labor Ready*, a class action asserting CDM claims, as part of a nuisance value settlement, the Court entered a consent decree declaring that the CDMs did not violate Labor Code Section 212 and were legal under California Labor Code Section 300(g), which permits an employer deduction for goods or services furnished to employees at their request.  Thierman Decl., ¶36; *see* Wilkerson Consent Decree, attached as Exhibit 3 to the RJN.

Subsequently, the California legislature passed Senate Bill 1499 specifically targeted at making Labor Ready's CDM program illegal.  In vetoing the bill, Governor Schwarzenegger declared that the CDMs were voluntary and beneficial to the workers.  Thierman Decl., ¶37; *see* Schwarzenegger Note to Senate, attached as Exhibit 4 to the RJN.  Moreover, Defendant contends that the fact that legislation was drafted to target the CDMs is evidence that the existing Labor Code sections, including those relied up by Plaintiff, do not apply to the CDMs at Labor Ready's offices.  Thierman Decl., ¶37.

Further, Defendant contends that Plaintiff does not have a right to bring a PAGA action where a California Superior Court has directly entered an order finding the CDMs were legal and ordering the machines to be maintained.  Labor Ready further contends that it complied with all of the *Wilkerson* mandates, and therefore, that even putting aside the substantial issues around arbitrability, Plaintiff and class members would be judicially estopped from holding Defendant liable for the CDM service.  Thierman Decl., ¶38.

Accounting for these potential bars to relief, the settlement itself provides exceptional relief to Class Members.

- 22 -

### iii.    Motions for Class Certification

Regardless of the outcome of the appeals, Plaintiff would still have to obtain certification of this case in order to recover for the absent class members. Defendant believes this hurdle to be significant, particularly because this Motion has already been denied in this case and in *Vicencio,* an earlier case previously pending in this district raising the same wait and travel time claims alleged by Plaintiff Allen.  In *Vicencio v. Labor Ready Southwest, Inc*., No. CV 0808646 RGK, Judge Klausner found that the plaintiff's wait time and travel time claims against Labor Ready could not be certified under Rule 23(b)(3) because "[t]he nature of [the plaintiff's] claims require extensive inquiry into individualized issues surrounding each member's wait time and time spent delivering work tickets."  *See* RJN, Ex. 1 (*Vicencio* Order Re Plaintiff's Motion for Class Certification).  The court further determined that due to the predominance of individualized issues and plaintiff's primary claim for monetary relief, that certification was not warranted under Rule 23(b)(1) or Rule 23(b)(2).  *Id.*   If Plaintiff Allen attempted to bring another certification motion, not only would Defendant argue that it was simply too late (given the local rule requiring certification motions to be brought within 90 days of filing of the Complaint, *see* Local Rule 23-3), but also that the *Vicencio* order was collateral estoppel on the issue of the certification of a wait and travel time class. *See Frank v. United Airlines, Inc.,* 216 F.3d 845, 852 (9th Cir. 2000); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.* (9th Cir. 2006) 442 F.3d 741, 746 (class claims extinguished by prior class action settlement).  Thierman Decl., ¶39.

As for the CDM claims, it is a fundamental rule of class actions that, to be adequate, the class representative's claims must not be antagonistic to the interests of the class members.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 (1997); *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 315 (5th Cir.

- 23 -

2007)("intraclass conflicts may negate adequacy under Rule 23(a)(4)").   In

opposition to the original certification motion, Defendant obtained over 1,100

CDM Petitions as well as dozens of declarations from temporary workers in branch

offices throughout California, which state the temporary workers: (1) "are against"

any lawsuit that would "challenge their right to use these machines;" (2) that the

CDMs "are a benefit" to them; and that 3) that shutting off the machines "would

cause [them] financial harm and be an inconvenience."   Thus, if Plaintiff made

another attempt to certify the CDM claims, Defendant would contend that the

CDM class could not be certified because Plaintiff is seeking relief that is

detrimental to thousands of class members. *See Payne v. Travenol Laboratories,

Inc*., 673 F.2d 798, 810–811 (5th Cir. 1982).  Thierman Decl., ¶40 .

Although Plaintiff believes that it will ultimately prevail on the appeals and

a subsequent Motion for Class Certification, Plaintiff recognizes the risk that the

courts might ultimately agree with Defendant at one or more of the various stages

of the litigation.  Based on an independent investigation and evaluation, Plaintiff is

of the opinion that the Settlement is fair, reasonable, and adequate, and is in the

best interest of the Class Members in light of all known facts and circumstances,

including the risk of significant delay, the risk that if this matter is litigated a Class

may not be certified by the Court or that it may later be decertified, the risk that

Defendant will prevail on its defenses, as well as issues associated with the

pending appeals and the arbitration agreement signed by Plaintiff and the putative

class members.  Thierman Decl., ¶41.

### b.    Likely Duration of Further Litigation

This action has been pending in the state, federal and appellate court system

for nearly four years.  Because there are issues before the appellate court and the

class has not been certified, the likely duration of further litigation would be more

than a year, which would further delay any payment to the Class Members.

- 24 -

1  Granting approval of this class-action settlement would create a settlement fund

2  that would remedy those violations.  Thierman Decl., ¶42.

3  c.  The Amount Offered in the Settlement

4  Taking into account the strength and weaknesses of Plaintiff's claims,

5  Defendant has agreed to pay, to each class member who submits a timely Claim

6  Form and does not opt out of the Settlement: $10.00 to each Class Member who

7  never used the CDMs and $25.00 to each class member who used the CDMs at

8  least one time during the class period.  Given the number of putative class

9  members and the procedural challenges to pursuit of class claims, this recovery is

10  reasonable and adequate.  In fact, this amount will reimburse over 65% of class

11  members who used the CDM for **more than** every dollar of CDM fees they paid.

12  In addition, it will pay these class members $10 for their Wait and Travel Time

13  claims.  Ferencz Decl., ¶8.  Furthermore, Defendant will pay the State of

14  California, Labor & Workforce Development Agency a payment of $18,750 as

15  PAGA penalties.  In addition, Labor Ready has agreed to substantial injunctive

16  relief which will address many of the concerns Plaintiff raised in his lawsuit as

17  described in detail in Section III(B).

18  d.  Experience and Views of Counsel

19  Counsel for Plaintiffs has substantial experience in prosecuting class actions,

20  including actions that involve the application of the California Labor Code and the

21  FLSA.  Thierman Decl., ¶¶4-13  ; Cho Decl., ¶¶2-4; Setareh Decl., ¶6  Plaintiff

22  believes he would ultimately prevail, however, litigating the case would be time-

23  consuming, expensive, and like most class actions, risky.  As a class action, the

24  case is complex, and given the issues involved, the case could be litigated for

25  years.  Thierman Decl., ¶¶41-43.  Class counsel engaged in extensive litigation in

26  this case, including moving for class certification, opposing summary judgment

27  and Labor Ready's Motion to Compel Arbitration and appealing orders of this

28

- 25 -

court and the superior court.   Thierman Decl., ¶¶24-25.  Based on their experience with employment class action lawsuits, Plaintiff's counsel evaluated these various issues, including the strengths and weaknesses of the case, the fact that certification had been denied, the consequences of not settling in light of *Concepcion*, and the pending appeals, and have concluded that the Settlement is in the best interest of Class Members.  Thierman Decl., ¶26; Cho Decl. ¶11, Setareh Decl., ¶7.

### 3.     The Class Notice is Adequate

Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure provides that, [t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Further, the court should direct "the best notice practicable under the circumstances, including direct notice to all class members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2).  A notice of settlement is "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The proposed Class Notice to the Class Members fully satisfies these requirements.  A notice and claim form will be mailed by first class mail to all Class Members at their last known address based on Labor Ready's records.  This is presumed to be adequate notice.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  In addition, the Settlement Administrator will establish a website where class members can access a longer, more detailed Class Notice, an opt-out form, the full Settlement Agreement and additional claim forms.

The content of the Class Notice complies with Rule 23.  The Class Notice informs Class Members of: 1) the basis of the claims; 2) who is included in the

- 26 -

class; 3) who is eligible for payment and the potential for settlement recovery; 3) how Class Members may exclude themselves from the settlement; 4) their right to object to the Settlement; and 5) the contact information for the Claims Administrator.  The Class Notice adequately describes the terms of the settlement in sufficient detail to alert any person with an adverse view point so that they may object and be heard.  *See* Class Notice and Claim Form, Ex. 1 to the Settlement Agreement; Class Notice – Long Form, Ex. 2 to Settlement Agreement.

### B.    The Class Should be Certified for Settlement Purposes Only.

When "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify . . . the propriety of the certification." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  To be certified, a class must meet the certification requirements of Rule 23.  *Hanlon*, 150 F.3d at 1019.  In determining whether the class may be certified, however, the court may appropriately consider that there will be no trial.  *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Under Rule 23(a), a class may be certified if: 1) numerousity exists; 2) common questions of law and fact are present; 3) the class members' claims are typical of those of the class; and 4) there is an adequate class representative.  *See* Fed. R. Civ. P. 23(a).  Even if a class action satisfies the Rule 23(a) requirements, it must also fulfill one of the requirements set forth under Rule 23(b) subdivisions 1-3.  Under Rule 23(b)(3), a class action may be maintained if there is a predominance of common questions of law and fact and a class action is superior to other methods of adjudication.  As set forth below, Plaintiff contends, and, for

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

settlement purposes only, Defendant does not object, that each of these requirements is met.

### 1.    Numerousity

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable."  The numerousity requirement is met when it would be difficult or inconvenient to join all members of the class.  *Wiener v. Dannon Co., Inc*., 255 F.R.D. 658, 664 (C.D. Cal. 2009).  Although there is no numerical requirement, a class of one thousand members "clearly satisfies the numerousity requirement."  *Sullivan v. Chase Inv. Servs., Inc*., 79 F.R.D. 246, 257 (N.D. Cal. 1979).

The Class in this case is defined as all temporary Labor Ready employees who worked in California from April 30, 2005, through preliminary approval of the proposed settlement.  Settlement Agreement, ¶4.  The class consists of approximately 206,000 temporary Labor Ready employees over approximately seven years.  Ferencz Decl., ¶4 .  Since a class of forty is sufficient to satisfy the numerousity requirement, surely the Class Members in this case have satisfied the numerousity requirement.  *Int'l Molders' & Allied Workers' Local 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983).

### 2.    Commonality

Rule 23(a)(2) requires that "there are questions or law of fact common to the class."  Fed. R.Civ. Pro. 23(a)(2).  "[I]t is not necessary that *all* questions of law and fact be common."  *West*, 2006 WL 1652598, at *3 (citing *Hanlon*, 150 F.3d at 1019).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019.  The commonality requirement is to be "construed permissively."  *Dukes v. Wal-Mart, Inc*., 509 F.3d 1198, 1177, (9th Cir. 2007).

Common questions of fact exist among Class Members in this case.  If there is at least one issue whose resolution will affect all or a significant number of a class' members, then commonality exists.  *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).  Some of the common questions of fact and law that affect the Settlement Class include: (1) whether time spent waiting in Labor Ready's office is compensable under California or federal law, (2) whether time spent traveling between Labor Ready's office and the jobsite where class members perform work is compensable under California or federal law, (3) whether the CDM fee was an illegal deduction, (4) whether payment via the CDMs violated California Labor Code Section 212, and (5) whether the Settlement Class member wage statements complied with California Labor Code Section 226.  In the absence of class certification and settlement, each Class Member would be forced to litigate his or her claims individually.  The commonality element is satisfied.  Thierman Decl., ¶45.

### 3.   Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  For typicality to exist, class representative plaintiffs must have claims "reasonably co-extensive with those of absent class members," but need not be "substantially identical."  *Hanlon*, 150 F.3d at 1020.  The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, all class members, including Plaintiff Allen, worked for Labor Ready as temporary employees between June 30, 2005, and thus were subject to the same policies and practices regarding payment for wait and travel time.  The class

1    members and Allen were also subject to the same CDM fees in the event they

2    elected to use the CDM.  Thierman Decl., ¶46.

3         **4.    Adequacy**

4         Finally, Rule 23(a) requires that the "representative parties will fairly and

5    adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4).  The

6    adequacy factor contains two requirements: "(1) that the representative's party's

7    attorney be qualified, experienced and generally be able to conduct the litigation;

8    and (2) that the suit is not collusive and plaintiff's interests are not antagonistic to

9    those of the remainder of the class."  In re *United Energy Corp. Solar Power*

10   *Modules Tax Shelter Investments Securities Litigation*, 122 F.R.D. 251, 257 (N.D.

11   Cal. 1988).

12        Both of the adequacy factors are satisfied in this case.  Plaintiff has retained

13   counsel who are extremely experienced in employment class action cases.

14   Thierman Decl., ¶¶4-13; Cho Decl., ¶¶2-4 .  Further, Plaintiff's counsel has

15   negotiated vigorously – over the course of years – to ensure that the Class receives

16   maximum relief.  Thierman Decl., ¶¶22-27, 47; Cho Decl., ¶10.  As set forth

17   above, the settlement is not collusive.

18         Further, Plaintiff's interests are not antagonistic or conflicting with the

19   interests of other Class Members.  Plaintiff suffered the same alleged injury as

20   other Class Members when he was not paid for his wait and travel time paid and

21   elected to use the CDM's located in Labor Ready's offices and paid the associated

22   fee.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("[A]

23   class representative must be part of the class and 'possess the same interest and

24   will suffer the same injury' as the class members.").  He has dedicated his time and

25   energy towards obtaining relief for the Class.  Accordingly, Plaintiff Allen is an

26   adequate class representative.  Thierman Decl., ¶47.

27

28

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

### 5. Predominance

Rule 23(b)(3) requires that "questions of law or fact predominate over any questions affecting only individual members." "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at 1022. As briefly discussed with respect to the commonality requirement, questions of law and fact predominate over questions affecting only individual Class Members. Whether a Class Member actually worked at Labor Ready as a temporary worker during the class period is traceable through Defendant's records and does not preclude a finding of predominance. *See e.g., West v. Circle K Stores, Inc.* No.04-0438, 2006 WL 1652598, at * 7-8 (E.D. Cal. June 13, 2006) (predominance inquiry satisfied despite individualized damages). Thierman Decl., ¶48.

### 6. Superiority

Finally, Rule 23(b)(3) also provides that "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). The factors to be considered are: (1) the class members' interests in controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS

1   adjudicated most profitably on a representative basis." *Zinser v. Accufix Research*

2   *Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).

3        Prosecuting this action as a class action is a superior method to all other

4   available methods of adjudication.  If not for this Settlement, a large majority of

5   Settlement Class Members will never have their claims determined on the merits or

6   recover any funds.  Finally, since the parties wish to certify the case for settlement

7   purposes only, the Court need not determine whether there will be "intractable

8   management problems."  *Amchen*, 521 U.S. at 620.  In light of these findings, a

9   class action is a superior method for adjudicating this controversy.  Thierman

10  Decl., ¶49.

11  **V.     CONCLUSION**

12       For the all of the foregoing reasons, the parties respectfully request that the

13  Court enter an order preliminarily approving the Class Action Settlement, order

14  that notice shall issue to Class Members, and schedule a final fairness hearing.

15  
16                     THE THIERMAN LAW FIRM, P.C.

17  Date: March 11, 2013          By:_/s/ Mark Thierman_____

18                          Class Counsel/Attorneys for Plaintiff

19  
20                     AEQUITAS LAW GROUP, APLC

21  Date: March 11, 2013          By:_/s/ Joseph Cho_____

22                          Class Counsel/Attorneys for Plaintiff

23  
24                     THOMPSON & KNIGHT LLP

25  Date: March 11, 2013          By:_/s/ Kyann C. Kalin_____

26                          Attorneys for Defendant

27                          LABOR READY SOUTHWEST, INC.

28  

MOTION FOR PRELIMINARY APPROVAL
Case No. C 09-02712 RS