Mark R. Thierman (SBN 72913)
THIERMAN LAW FIRM
7287 Lakeside Drive
Reno, Nevada 89511
Telephone: (775) 284-1500
Facsimile: (775) 703-5027

Joseph Cho (SBN 198844)
Ronald H. Bae (SBN 186826)
AEQUITAS LAW GROUP, APLC
500 S. Grand Ave., Suite 1310
Los Angeles, California 90071
Telephone: (213) 223-7144
Facsimile: (213) 223-7098

Attorneys for Plaintiff JEFFREY LEE ALLEN
(Additional plaintiff's counsel listed on following page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY LEE ALLEN; on behalf of himself, all others similarly situated, the general public and as an "aggrieved employee" under the California Labor Code Private Attorneys General Act,<br><br>Plaintiff,<br><br>v.<br><br>LABOR READY SOUTHWEST, INC., a Washington corporation doing business in the State of California; and DOES 1 through 50, inclusive,<br>    Defendants. | Case No.  2:09-CV-04266 DDP(AGR)<br><br>**DECLARATION OF MARK R. THIERMAN IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS, CLASS REPRESENTATIVE SERVICE PAYMENT AND CLAIMS ADMINISTRATION EXPENSES**<br><br>Judge: Hon. Dean Pregerson<br>Date:   August 26, 2013<br>Time:   10:00 a.m.<br>Ctrm:   3 |

- 1 -
DECLARATION OF MARK R. THIERMAN ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION
FOR ATTORNEYS' FEES AND COSTS, CLASS REP. SERVICE PAYMENT AND CLAIMS ADMINISTRATION EXPENSES

# ADDITIONAL COUNSEL FOR PLAINTIFF

Shaun Setareh (SBN 204514)
LAW OFFICES OF SHAUN SETAREH
9454 Wilshire Boulevard, Penthouse Floor
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

Louis Benowitz (SBN 262300)
LAW OFFICES OF LOUIS BENOWITZ
9454 Wilshire Boulevard, Penthouse Floor
Beverly Hills, California 90212
Telephone: (310) 888-7771
Facsimile: (310) 888-0109

Christopher J. Canlas (SBN 247291)
CANLAS LAW GROUP, APLC
615 W. Beverly Blvd.
Montebello, CA 90640
Telephone: (323) 888-4325
Facsimile: (323) 888-4329

1 I, Mark R. Thierman, hereby declare and state as follows:

2     1.    The facts stated herein are based upon my own knowledge and observation and if called upon to testify I could and would competently do so.

    2.    I am an attorney at law admitted to practice before the Supreme Court of the State of California and the State of Nevada and all federal district courts located in California and Nevada, as well as the United States Court of Appeals for the Ninth Circuit. I am therefore duly admitted to practice before this Court.

    3.    I am serving as lead counsel and attorney of record for Plaintiff Jeffrey Lee Allen ("Plaintiff") in this action against Defendant Labor Ready Southwest, Inc. ("Defendant" ).

## EXPERIENCE AND QUALIFICATIONS

    4.    My background and qualifications are set forth hereinafter. I received my Bachelors of Arts degree Magna Cum Laude from New York University in 1973, and was Phi Beta Kappa, Founders Day Award and Class Representative at Graduation. I also receive the Mr. Justice Bloustein law award and the Adoph Ochs Adler (NY Times) award for community service for instituting the pre-law student paralegal program at Office of Economic Opportunity, Queens Legal Services, Inc.

    5.    In 1976, I graduated from the Harvard Law School and was admitted to practice in the State of California. I was admitted to practice in the state of Nevada in 2002, shortly after moving to Reno and passing the Nevada Bar exam. I am a member of the bar of the United States Court of Appeals for the DC Circuit and the United States Supreme Court, and have been admitted to other courts pro hoc vice.

    6.    Since 1977, I have generally limited my practice to the area of Labor and Employment law, with an emphasis on traditional labor law subjects like apprenticeship, overtime compensation, prevailing wage, Labor Management

1 (Taft Hartley) trust funds, and unfair labor practice litigation before agencies like the National Labor Relations Board, the California Division of Labor Standards Enforcement and the United States Department of Labor.

7. I have authored and co-authored books and articles on the topic of labor relations law. I am co-author of the book entitled "Lowest Responsible Bidder- A Guide to Merit Shop Construction," and the content of "Safety Plan Builder" a software product published by Jian with a 300-page book on OSHA safety law. I am the co-author of the chapter in the CEB text "Advising California Employers" on workplace safety. I have written many articles that have appeared in both industry publications and the magazine for the Labor Law Section of the California Bar.

8. I was a guest speaker on radio, an ABA "web cast" and at numerous seminars on class action wage hour cases under both federal and California law.

9. I have represented parties in over 100 reported cases, not including numerous administrative proceedings. I also have extensive trial and other courtroom experience.

10. I estimate that I have secured over a half a billion dollars in restitution for class members in wage and hour class actions since 1997. I was counsel for Plaintiff class in a series of overtime class actions against Pacific Bell which resulted in almost $100 million in settlement payments. I litigated prevailing wage cases against various public works contractors in California and Nevada, tried a qui tam case against a contractor based upon prevailing wage misclassifications, and litigated many cases on unlawful deductions and chargebacks under both California Labor Code Sections 221 and 2802.

11. Recently, I represented a group of stock and mortgage broker employees who sued for overtime, meal and rest period violations and unlawful pay deductions against large, national employers, including Bank of America, Smith Barney, Merrill Lynch, UBS, and AG Edwards. These cases settled for

DECLARATION OF MARK R. THIERMAN ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS, CLASS REP. SERVICE PAYMENT AND CLAIMS ADMINISTRATION EXPENSES

approximately half a billion dollars in the aggregate. Examples of a few of these cases and the associated settlements are as follows: $18 million for mortgage brokers in *Franklin v. B of A* (USDC ND Cal. Civil action No.: C-05-00519 CRB with companion FLSA national class in USDC Minn) and *Karim* v. *B of A* (another $18 million for stock brokers); *Bahramipour v. Citigroup Global Markets, Inc. formerly known as Salomon Smith Barney,* USDC ND Cal. No. C-04-4440 CW, 2006 U.S. Dist. Lexis 9010 ($108 million for financial advisors).

12. I have appeared as counsel in three cases in the California Supreme Court: *Asnuts* v. *Pacific Bell* (2000) 23 Cal. 4th 1, *Associated Builders & Contractors, Inc. v. San Francisco Airports Corn.* (1999) 21 Cal. 4th 352 and *Southern Cal. Ch. Of Associated Builders Etc. Cont.* v. *California Apprenticeship Council* (1992) 4 Cal. 4th 442.

13. In the recent past, my practice has focused on wage and hour class actions, and California lawsuits in particular. I have filed and successfully litigated numerous cases involving the same general types of allegations at issue in this case.

## THIS LITIGATION

14. Plaintiff Jeffrey Allen ("Plaintiff" or "Allen") brought a wage and hour class action lawsuit against Defendant Labor Ready Southwest Inc. ("Defendant" or "Labor Ready") pursuant to California law and the Fair Labor Standards Act ("FLSA"). Plaintiff, a former temporary worker for Labor Ready, asserted multiple causes of action against Labor Ready, but the claims can be summarized in two categories. The first category of claims are based on Plaintiff's allegation that Labor Ready, a temporary work agency, failed to compensate temporary workers who worked out of its branch offices located in the State of California, for time the workers spent waiting in Labor Ready's office for work and time spent traveling to and from Labor Ready's office to the jobsite where the temporary workers performed the work for which they were paid. These "Wait

and Travel Time" claims, include failure to pay minimum wage and overtime. In addition, Plaintiff alleged that the small service fee charged by Cash Dispensing Machines ("CDMs") located in Labor Ready's offices, which workers could elect to utilize to cash their Labor Ready paychecks, violated the California Labor Code because it was an illegal deduction and violated Labor Code Section 212 regarding approved methods for paying wages (the "CDM Claims"). Plaintiff also asserts various penalty claims (including a claim under the Private Attorneys' General Act and Labor Code Section 203), paycheck claims (including claims under Labor Code Section 226(a)) as well as a Business and Professions §17200 claim, which are related to and derivative of the Wait and Travel and CDM claims.

15. Plaintiff's Class Action Complaint was filed in Los Angeles Superior Court on April 30, 2009. On June 15, 2009, Defendant removed the case to the United States District Court for the Central District of California under the Class Action Fairness Act.

16. During this same time frame, my co-counsel (Aequitas Law Group) was pursuing a companion class action, asserting identical wait and travel time claims and pay check claims along with meal and rest break claims. This case, *Estrella Vicencio v. Labor Ready Southwest, Inc.,* Case No. 2:08-cv-08646-RGK (CWx) (C.D. Cal), was before Judge Klausner, who on January 8, 2010 denied class certification.

17. Plaintiff Allen subsequently moved to certify his claims under FRCP 23, which this Court denied on February 16, 2010.

18. Defendant filed a Motion for Summary Judgment as to all of Plaintiff's claims, which this Court granted in part on March 9, 2011. The order on the Motion for Summary Judgment dismissed with prejudice Plaintiff's wait and travel time claims and Plaintiff's claim that Defendant's paychecks violated Cal. Lab. Code Section 212. This Court then remanded the case to state court since only Plaintiff's CDM state law claims remained. Specifically, the remanded

claims all related to Plaintiff's allegation that Defendant violated the California Labor Code by providing employees the option of cashing their pay checks at CDMs located in Labor Ready's branches that charged the employees a small fee, and the related claims under the Private Attorney General Act ("PAGA") and California Business and Professions Code Section 17200. Plaintiff appealed the Court's summary judgment ruling to the Ninth Circuit.

19. Following the remand to state court, on April 27, 2011, the United States Supreme Court issued its ruling in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) (hereafter "*Concepcion*"). In *Concepcion*, the Supreme Court upheld an arbitration clause containing a class action waiver, which the plaintiffs had challenged on the ground that the waiver was unconscionable under California state law. In overruling long-standing California precedent that class-action waivers in arbitration agreements are unconscionable, the Court upheld the arbitration clause containing the class action waiver, reasoning that the FAA preempted California state law.

20. Because Plaintiff Jeffrey Allen's Employment Application (along with the employment applications of the tens of thousands of putative class members) contains a complete class and representative action waiver, following the *Concepcion* decision, Labor Ready moved to compel Allen to individually arbitrate all of his remaining claims against Labor Ready. Plaintiff opposed Labor Ready's Motion to Compel Arbitration.

21. On November 10, 2011, the court granted Defendant's Motion to Compel Arbitration as to the CDM claims asserted under the California Labor Code Sections 212, 221 and 400-410 and Business and Professions Code, however, the superior court retained jurisdiction over the PAGA claim. Plaintiff appealed the court's decision compelling all but the PAGA claims to arbitration and Defendant filed a cross-appeal regarding the court's denial of the Motion to Compel Arbitration as to the PAGA claim. At the time the Parties reached a

settlement in this case, the appeals in both the Ninth Circuit Court of Appeal and the California Court of Appeal had been briefed (fully in the Ninth Circuit case and partially in the California Court of Appeal case) but not yet decided.

## MEDIATION AND NEGOTIATIONS

22. The Parties initially mediated this case on November 9, 2009 before the Honorable Judge Legg at JAMS in San Francisco, California. Then, on October 2010, the parties engaged in their second effort at settlement, at which time they participated in a full-day mediation session with Mark S. Rudy, Esq., who is recognized as one of the top mediators in California. At the time of the second mediation, Labor Ready's Motion for Summary Judgment was pending and *Concepcion* had not yet been decided. The parties were unable to reach an agreement at this second mediation despite a mediator's proposal from Mr. Rudy.

23. Approximately two years later, while the appeal of this Court's summary judgment order and the state court's order regarding arbitration were briefed but before receiving any rulings from the appellate courts, the Parties weighed the benefits and risks of continuing with the litigation, returned to their negotiations and ultimately reached a settlement. Specifically, on August 9, 2012, the Parties attended a second mediation session with Mr. Rudy. Although the case did not resolve during the mediation itself, Mr. Rudy made a mediator's proposal and then continued to work with the parties following the mediation. Ultimately the Parties were able to reach an agreement as to the terms of a settlement which were based in large part on Mr. Rudy's Mediator's Proposal. Based on this agreement, the Parties filed a Notice of Settlement and Stipulated Motion for Remand with the Ninth Circuit Court of Appeals to remand the matter to the district court for settlement proceedings, which it did on October 23, 2012.

24. Prior to each mediation, the Parties exchanged and continued to exchange, significant information relating to the claims alleged in Plaintiff's Complaint, both in response to formal discovery requests and informal information

DECLARATION OF MARK R. THIERMAN ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS, CLASS REP. SERVICE PAYMENT AND CLAIMS ADMINISTRATION EXPENSES

1 requests to permit class-wide estimates. Among other things, Defendant provided
2 class-wide documents and data from which Plaintiff was able to make estimates
3 relating to class size, average hourly rate, number of dispatches, length of pre-
4 dispatch waiting time, average CDM charge, frequency of CDM usage, etc.

5     25. With this information, the Parties engaged in numerous discussions
6 relating to their respective legal and factual positions concerning whether the
7 action could be maintained and prosecuted as a Class in the courts and/or
8 arbitration, the merits of Plaintiff's claims and Defendant's defenses. Following
9 years of information gathering; significant U.S. Supreme Court and California
10 Supreme Court rulings during the litigation; heavy law and motion practice,
11 including Motions for Class Certification, Motion to Compel Arbitration, Motion
12 for Summary Judgment, and the filing of appeals in both the Ninth Circuit and the
13 California Court of Appeals; and multiple mediations attended by 5 experienced
14 plaintiff-side class action law firms, the Parties agreed to resolve the case on a
15 class wide basis.

16     26. Ultimately, it is the opinion of Plaintiff's Counsel, comprised of a
17 committee of 5 law firms, all of whom are experienced wage and hour class action
18 attorneys, that the proposed settlement is fair and reasonable and represents a better
19 alternative than continued litigation under all the circumstances.

**THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

22     27. The proposed settlement was the product of years of arms-length
23 negotiation between experienced counsel, mediated by one of the most preeminent
24 mediators in California, and resolved by mediator's proposal. As the Settlement
25 Agreement itself reveals, there is no preferential treatment for any segments of the
26 class. Rather, it is tailored to fairly give greater relief to those class members who
27 had actually experienced more alleged violations (i.e., used CDMs).

28

- 9 -
DECLARATION OF MARK R. THIERMAN ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION
FOR ATTORNEYS' FEES AND COSTS, CLASS REP. SERVICE PAYMENT AND CLAIMS ADMINISTRATION EXPENSES

28. The Settlement is fair because it affords the class members monetary and injunctive relief despite the fact that this Court (and the Court in *Vicencio v. Labor Ready Southwest, Inc.,* No. CV 0808646 RGK) denied class certification, and summary judgment was granted against half of Plaintiff Allen's claims. Also, the employment of Plaintiff and other class members is governed by an arbitration agreement containing a complete class action waiver which is enforceable against all but his PAGA claims, depending on the California Supreme Court's decision in a pending case, may prove to be enforceable, even as to Plaintiff's PAGA claim.

29. Given that Plaintiff would still have to go through the appellate process, litigate class certification, establish class-wide liability, and then prove up various issues regarding damages and penalties, the Settlement is reasonable and fair. Such efforts would take years and might ultimately prove to be unfruitful. By contrast, the Settlement ensures timely relief and recovery for class claims, including injunctive relief addressing many of the issues raised in Plaintiff's Complaint. It therefore satisfied the reasonableness and adequacy standards.

30. The putative class has many obstacles to overcome before they can recover monetary funds for their class claims through litigation. First, Plaintiff must prevail on the appeal pending in the Ninth Circuit to even have a chance of recovering damages for wait and travel time claims. Even if Plaintiff prevails on appeal, Plaintiff will likely face a Motion to Compel Arbitration on these wait and travel time claims. Regarding the CDM claims, Plaintiff is faced with obtaining certification of these claims in addition to establishing liability and may, depending on the outcome of a pending California Supreme Court case (Iskanian), be faced with another appeal seeking to compel individual arbitration of his claims.

31. This Court has already determined that under California law and the FLSA, the time Plaintiff spent waiting for work in Labor Ready's office and traveling to and from Labor Ready's customer's jobsite (where his work was actually performed) was not compensable as a matter of law. The ruling is on

1 appeal, however, this Court is not alone in its determination that this time is not
2 compensable as a matter of law. A district court for the Western District of
3 Michigan granted summary judgment in favor of Labor Ready on identical wait
4 and travel time claims brought under the FLSA and Michigan state law. *See*
5 *Bernal v. TrueBlue, Inc.*, No. 1:08-CV-508, 2010 WL 2599762 at *9 (W.D. Mich.
6 June 25, 2010). In *Bernal*, the district court reasoned that summary judgment was
7 appropriate because any time the plaintiffs spent waiting in Labor Ready's offices
8 was "overwhelmingly for the benefit of [the] [p]laintiffs" and that "[n]o reasonable
9 fact finder could determine otherwise." *Id*. at *6. Further, the Court held that
10 "[p]laintiffs' travel time to and from the customer's location is not compensable as
11 either an extension of the continuous workday or a principal activity of
12 employment." *Id*. at *9.

13    32.    In the event that Plaintiff prevails on his appeal, Defendant would
14 respond by moving to compel arbitration of the wait and travel time claims. Given
15 the United States Supreme Court's decision in *Concepcion* and recent rulings by
16 the Ninth Circuit and the United States Supreme Court, Defendant believes that
17 Allen's wait and travel time claims may well be subject to a determination that he
18 must pursue these claims individually in arbitration.

19    33.    Although Plaintiff's CDM claims survived Labor Ready's Motion for
20 Summary Judgment, Plaintiff has been compelled by the state court to individually
21 arbitrate these claims with the exception of the PAGA claim.

22    34.    The issues of the enforceability of employment agreements containing
23 class action waivers, and the arbitrability of PAGA claims are currently the subject
24 of competing state and district court decisions in California and at least two
25 pending case before the California Supreme Court. *See Iskanian v. CLS*
26 *Transportation of Los Angeles,* 206 Cal.App.4th 949 (2012), review granted
27 9/20/2012; *Caron v. Mercedes Benz Financial Services USA*, Case No. S205263
28 (review granted 10/24/12). As a result, whether Plaintiff would ultimately have the

right to pursue any of his claims except in arbitration and on an individual basis in arbitration is uncertain. Indeed, because the class action waiver that Plaintiff signed was contained, in some form, in Labor Ready's Employment Application which each temporary worker completes before working for Labor Ready, Defendant contends that the arbitration agreement will prevent a substantial challenge to any class member's effort to obtain relief on behalf of a putative class. As a result, whether Plaintiff or any of the putative class members will ultimately have the right to pursue their wage and hour claims against Labor Ready except on an individual basis in arbitration is, at best, uncertain.

35. In addition, if the settlement is not approved, Defendant will assert that class members will be precluded from recovery even on an individual basis because the PAGA statute of limitations is only one year. *See* Cal. Civ. Code §340; *Amaral v. Cintas Corp.,* 163 Cal.App.$^{4th}$ 1157, 1199 (2008). Since certification was denied nearly three years ago, Defendant will argue that the statute has not been tolled and any putative class members claims are time barred. This statute of limitations argument is all the more powerful because Labor Ready turned the CDMs in all of its California offices off in January 2010. As a result, if this settlement is not approved, it may well eliminate the class members' only opportunity to recover on the CDM claims.

36. As to the merits of the CDM claims, there has also been a prior determination on this issue by a California court, which Defendant contends is binding upon the class. In *Wilkerson v. Labor Ready*, a class action asserting CDM claims, as part of a nuisance value settlement, the Court entered a consent decree declaring that the CDMs did not violate Labor Code Section 212 and were legal under California Labor Code Section 300(g), which permits an employer deduction for goods or services furnished to employees at their request.

37. Subsequently, the California legislature passed Senate Bill 1499 specifically targeted at making Labor Ready's CDM program illegal. In vetoing

1  the bill, Governor Schwarzenegger declared that the CDMs were voluntary and
2  beneficial to the workers. Moreover, Defendant contends that the fact that
3  legislation was drafted to target the CDMs is evidence that the existing Labor Code
4  sections, including those relied up by Plaintiff, do not apply to the CDMs at Labor
5  Ready's offices.
6       38. Further, Defendant contends that Plaintiff does not have a right to
7  bring a PAGA action where a California Superior Court has directly entered an
8  order finding the CDMs were legal and ordering the machines to be maintained.
9  Labor Ready further contends that it complied with all of the *Wilkerson* mandates,
10 and therefore, that even putting aside the substantial issues around arbitrability,
11 Plaintiff and class members would be judicially estopped from holding Defendant
12 liable for the CDM service.
13      39. Regardless of the outcome of the appeals, Plaintiff would still have to
14 obtain certification of this case in order to recover for the absent class members.
15 Defendant believes this hurdle to be significant, particularly because this Motion
16 has already been denied in this case and in *Vicencio,* an earlier case previously
17 pending in this district raising the same wait and travel time claims alleged by
18 Plaintiff Allen. In *Vicencio v. Labor Ready Southwest, Inc*., No. CV 0808646
19 RGK, Judge Klausner found that the plaintiff's wait time and travel time claims
20 against Labor Ready could not be certified under Rule 23(b)(3) because "[t]he
21 nature of [the plaintiff's] claims require extensive inquiry into individualized
22 issues surrounding each member's wait time and time spent delivering work
23 tickets." *See* RJN Ex. 1 (*Vicencio* Order Re Plaintiff's Motion for Class
24 Certification). The court further determined that due to the predominance of
25 individualized issues and plaintiff's primary claim for monetary relief, that
26 certification was not warranted under Rule 23(b)(1) or Rule 23(b)(2). *Id.* If
27 Plaintiff Allen attempted to bring another certification motion, not only would
28 Defendant argue that it was simply too late (given the local rule requiring

certification motions to be brought within 90 days of filing of the Complaint, *see* Local Rule 23-3), but also that the *Vicencio* order was collateral estoppel on the issue of the certification of a wait and travel time class. *See Frank v. United Airlines, Inc.,* 216 F.3d 845, 852 (9th Cir. 2000). *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.* (9th Cir. 2006) 442 F.3d 741, 746 (class claims extinguished by prior class action settlement).

40. As for the CDM claims, it is a fundamental rule of class actions that, to be adequate, the class representative's claims must not be antagonistic to the interests of the class members. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 (1997); *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 315 (5th Cir. 2007)("intraclass conflicts may negate adequacy under Rule 23(a)(4)"). In opposition to the original certification motion, Defendant obtained over 1,100 CDM Petitions as well as dozens of declarations from temporary workers in branch offices throughout California, which state the temporary workers: (1) "are against" any lawsuit that would "challenge their right to use these machines;" (2) that the CDMs "are a benefit" to them; and that 3) that shutting off the machines "would cause [them] financial harm and be an inconvenience." Ongaro Decl., ¶11, Ex. D. Thus, if Plaintiff made another attempt to certify the CDM claims, Defendant would contend that the CDM class could not be certified because Plaintiff is seeking relief that is detrimental to thousands of class members. *See Payne v. Travenol Laboratories, Inc*., 673 F.2d 798, 810–811 (5th Cir. 1982).

41. Although Plaintiff believes that it will ultimately prevail on a subsequent Motion for Class Certification and that he will not ultimately be compelled to individually arbitrate his claims, Plaintiff recognizes the risk that the courts might ultimately agree with Defendant at one or more of the various stages of the litigation. Based on an independent investigation and evaluation, Plaintiff is of the opinion that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Class Members in light of all known facts and circumstances,

1  including the risk of significant delay, the risk that if this matter is litigated a Class
2  may not be certified by the Court or that it may later be decertified, the risk that
3  Defendant will prevail on its defenses, as well as issues associated with the
4  pending appeals and the arbitration agreement signed by Plaintiff and the putative
5  class members.
6        42.    This action has been pending in the state, federal and appellate court
7  system for nearly four years.  Because there are issues before the appellate court
8  and the class has not been certified, the likely duration of further litigation would
9  be more than a year, which would further delay any payment to the Class
10 Members.  Granting approval of this class-action settlement would create a
11 settlement fund that would remedy those violations.
12       43.    Based on our experience with employment class action lawsuits,
13 Plaintiff's counsel evaluated these various issues, including the strengths and
14 weaknesses of the case, the fact that certification had been denied twice, the
15 consequences of not settling in light of *Concepcion*, and the pending appeals, and
16 have concluded that the Settlement is in the best interest of Class Members.
17 Attached as Exhibit A is the Second Amended Joint Stipulation of Class Action
18 Settlement and Release Agreement.

### THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED AGAIN

21       44.    Prior to preliminary approval, a Motion to Intervene was filed by
22 Proposed Interveners Margie Bedolla, Anthony Allen, Michael Alvarez and Tyler
23 Farmer (collectively, "Proposed Interveners" or "Objectors").  The Proposed
24 Interveners, represented by Initiative Legal Group, APC, and Capstone Law, APC,
25 sought intervention for the purpose of injecting themselves into the *Allen* Parties'
26 settlement negotiations.  After oral argument, that Motion to Intervene was denied,
27 however, the Proposed Interveners were granted leave to file an opposition to the
28 *Allen* Parties' anticipated Motion for Preliminary Approval of Class Action

1  Settlement for the purpose of allowing the Court to rule on any objections the
2  Proposed Interveners may have had with the *Allen* Settlement, prior to the granting
3  of preliminary approval.
4      45.    On March 11, 2013, the *Allen* Parties filed their Joint Motion for
5  Preliminary Approval of Class Action Settlement.  On March 18, 2013, Objector
6  Michael Alvarez filed his Objection to Plaintiff and Defendant's Joint Stipulation
7  of Class Action Settlement and Release Agreement.  All of the substantive terms
8  set forth in the Settlement Agreement were closely scrutinized by this Court, and
9  any and all concerns that this Court may have had with the Settlement were
10 addressed and amended to the Court's satisfaction.  Accordingly, on April 30,
11 2013, the objections were overruled and preliminary approval was granted over
12 Alvarez's objections.  Attached as Exhibit B are the Allen Parties' Reply Briefs in
13 support of the Motion for Preliminary Approval of Class Action Settlement.

## CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

16     46.    **Numerousity –** The class consists of approximately 210,000
17 temporary Labor Ready employees over approximately 7 years.
18     47.    **Commonality -** Common questions of fact exist among Class
19 Members in this case.  Some of the common questions of fact and law that affect
20 the Settlement Class include: (1) whether time spent waiting in Labor Ready's
21 office is compensable under California or federal law, (2) whether time spent
22 traveling between Labor Ready's office and the jobsite where class members
23 perform work is compensable under California or federal law, (3) whether the
24 CDM fee was an illegal deduction, (4) whether the CDM fee violated California
25 Labor Code Section 212, (5) whether the Settlement Class member wage
26 statements complied with California Labor Code Section 226.  In the absence of
27 class certification and settlement, each Class Member would be forced to litigate
28 his or her claims individually.  The commonality element is satisfied.

48. **Typicality -** Here, all class members, including Plaintiff Allen, worked for Labor Ready as temporary employees between June 30, 2005, and thus were subject to the same policies and practices regarding payment for wait and travel time. The class members and Allen were also subject to the same CDM fees in the event they elected to use the CDM.

49. **Adequacy -** Plaintiff has retained counsel who are extremely experienced in employment class action cases. Further, Plaintiff's counsel has negotiated vigorously – over the course of years – to ensure that the Class receives maximum relief. As set forth above, the settlement is not collusive. Further, Plaintiff's interests are not antagonistic or conflicting with the interests of other Class Members. Plaintiff suffered the same alleged injury as other Class Members when he was not paid for his wait and travel time paid and elected to use the CDM's located in Labor Ready's offices and paid the associated fee. Plaintiff has dedicated his time and energy towards obtaining relief for the Class. Accordingly, Plaintiff Allen is an adequate class representative.

50. **Predominance -** As briefly discussed with respect to the commonality requirement, questions of law and fact predominate over questions affecting only individual Class Members. Whether a Class Member actually worked at Labor Ready as a temporary worker during the class period is traceable through Defendant's records and does not preclude a finding of predominance.

51. **Superiority -** Prosecuting this action as a class action is a superior method to all other available methods of adjudication. If not for this Settlement, a large majority of Settlement Class Members will never have their claims determined on the merits or recover any funds. Finally, since the parties wish to certify the case for settlement purposes only, the Court need not determine whether there will be "intractable management problems." *Amchen*, 521 U.S. at 620. In light of these findings, a class action is a superior method for adjudicating this controversy.

# THE NAMED-PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE

52. Named-Plaintiff Allen has taken a substantial risk in deciding to bring this action on his own behalf and a group of other similarly situated employees of Defendant. Specifically, Mr. Allen could have been responsible for Defendant's costs if the class action was not successful. He could have also been subject to adverse future employment opportunities for his participation in a lawsuit against an employer. Given the substantial risks he took in bringing this action, in addition to his dedicated and significant involvement throughout the litigation, Plaintiff should be deemed the Class Representative for the Class and the Service Payment in the amount of $5,000 should be finally approved as fair and reasonable.

## CLASS COUNSEL'S FEES AND COSTS ARE FAIR AND REASONABLE

53. The attorneys' fees requested in the case represent a percentage of the common fund type of recovery. The percentage of recovery method protects the class from "churning" the case so as to justify a higher fee and recognizes the time value of money. It makes payment sooner better than payment later, even if interest is awarded by the court. The percentage of recovery method also recognizes that the risk of litigation may be increased as time goes on, so it is often better to settle early than to wait until enough fees are built into a case to justify a lodestar recovery formula. Notwithstanding the beneficial nature of a percentage of recovery method, the 5 law firms comprising Class Counsel have devoted significant hours to the case to date—e.g., pre-filing investigations; discovery; law and motion practice, including Motions for Class Certification, Motion to Compel Arbitration, and Motion for Summary Judgment; reviewing data/information pertaining to putative class members' claims; appellate work in both the Ninth Circuit and California Court of Appeals; multiple mediations; direct settlement discussions; and drafting settlement documents.

54. I have reviewed a summary of the firm's billing records and time entries, which are maintained during the regular course of business. I caused to be prepared the following chart which sets forth the total billable hourly rate (the rates are commensurate with the prevailing rates among firms that regularly litigate wage and hour class actions) and the hours worked by each attorney. The fee totals reflect the amounts that would have been charged on an hourly basis. California courts may approve attorneys' fees without reviewing detailed timesheets and regularly do so. *See Martino v. Denevi,* 182 Cal. App. 3d 553, 559 (1986) ("testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records"); *Dixon v. State Bar*, 39 Cal. 3d 335, 344 (1985) (an attorney need not submit contemporaneous time records to recover attorney fees); *Chavez v. Netflix, Inc.,* 162 Cal. App 4th 43, 64 (2008) ("detailed timesheets are not required of class counsel to support fee awards in class action cases") *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1006-1007 (1982) (the court may award fees based on time estimates); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254-55 (timesheets are not required of counsel to award attorneys' fees in class action cases); *Glandora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 470-471, 478 (1984) (a court may approve attorneys' fees based on billing summaries provided by counsel).

| **Schedule of Fees** | | | | |
|---|---|---|---|---|
| **Attorney** | **Title** | **Rate** | **Hours** | **Fees** |
| Mark Thierman | Partner | $795 | 649.90 | $516,670.50 |

55. As noted above, Thierman Law Firm has billed 649.9 hours for my time, at an hourly rate of $795, for a lodestar amount of $516,670.50. Aequitas Law Group has billed 860.6 hours, at an hourly rate of $550, for a lodestar amount of $473,330. The Law Offices of Shaun Setareh has billed 243 hours, at an hourly rate of $650, for a lodestar amount of $157,950. The Law Offices of Louis Benowitz has billed 70 hours, at an hourly rate of $420, for a lodestar amount of $29,400. Canlas Law Group has billed 172.6 hours, at an hourly rate of $425, for a lodestar amount of $73,355. The 5 Plaintiff's firms working on this matter have billed time at rates commensurate with the prevailing rates among defense and plaintiffs' firms that regularly litigate wage and hour class actions. Accordingly, Class Counsel have billed a total lodestar figure of $1,250,705.50. A multiplier of 0.90 is necessary to yield the requested fees of $1,125,000.00.

56. Over the course of this litigation, Thierman Law Firm has incurred a total of $37,380.49 in costs. These incurred costs, which were recorded during the regular course of business, were reasonable and necessary to properly prosecute this matter as a potential class action and obtain a class-wide settlement. A summary of expenses is attached hereto as Exhibit C.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 29, 2013, in Los Angeles, California.

          /s/ Mark Thierman_____
                 Mark R. Thierman